160 So. 764

## CITY OF BIRMINGHAM v. SMYER.

### 6 Div. 665.

Supreme Court of Alabama.
March 28, 1935.

W. J. Wynn and Jas. H. Willis, both of Birmingham, for appellant.

235

Smyer, Smyer & Bainbridge, of Birmingham, for appellee.

**KNIGHT, Justice.**

The complainant on April 15, 1927, the owner of certain described real estate, located in the city of Birmingham, Ala., sold and conveyed the same to the Oakwood Land Company. At the time of the sale, the lands were undeveloped and unimproved, and at that time had not been divided into lots.

The complainant sold the land for a small cash payment, and, to secure the balance of the purchase money, the purchaser executed to the seller a mortgage on the lands, which was delivered contemporaneously with the delivery of the deed. This mortgage was duly recorded.

After the purchase of the land, the Oakwood Land Company, with the consent and approval of the mortgagee, complainant in this suit, caused a part of said land to be subdivided into lots. A map and survey of the subdivision was duly filed for record in the office of the judge of probate of Jefferson county, Ala., and was of record at the time the appellant undertook to pave one or more of the "north and south streets" in said subdivision, and assessed against the abutting lots their respective proportions of the cost.

The bill avers that the proponent (the city of Birmingham) paved a part of Berney street, which ran through said property, under Ordinance 840–D, and assessed the abutting property with the cost of the same, and the assessment under this ordinance was made final April 10, 1928; and it paved a part of said Berney street under Ordinance 926–D, and assessments under this ordinance were made final February 12, 1929; and it paved an extension of said street under Ordinance 1245–D, and made this assessment final September 16, 1930. The cost of said pavement was assessed against the abutting property in each instance.

It is averred that the assessment made against each of the lots abutting on the streets paved was far in excess of the increased value of the respective lots by reason of the special benefits derived from the paving of the streets, and that this was contrary to, and in violation of, the provisions of section 223 of the Constitution of Alabama.

The complainant charges that he had no notice of, was not a party to, the proceedings for the construction of the improvements, and had no day in court to litigate with the city, and that in equity he was entitled to have an assessment made against each of the lots in an amount not in excess of the special benefits derived by reason of said betterments.

In paragraph 15 of the bill, it is averred that the assessments were made without regard to the provisions of the Constitution and laws of the state of Alabama; that they were made under and in pursuance of an agreement, either expressed or implied, by and between the city of Birmingham and the Oakwood Land Company, "to the effect that the entire cost to the city should be assessed against the abutting property, and that the Oakwood Land Company would not protest or contest such assessment and that said agreement and assessment thereunder were constructively fraudulent as against complainant, a lien creditor."

In paragraph 17 of the bill, it is averred that the city of Birmingham, in connection with its paving of said Berney street, but subsequent thereto, opened up and extended the said street northward for a considerable distance, and in said extension "took and appropriated, without condemnation proceedings, and without the consent of complainant, the major part of lot 1, in block 5, as shown and designated in said map and survey of said Oakwood Land Company and used and paved the same as a part of said extended street, and rendered worthless, or of little value, that portion of said lot 1, which was not embraced in the paved street. * * *" It is averred, however, that the Oakwood Land Company consented to said taking; it being charged that this extension of Berney street afforded "an outlet" to certain lands of the Oakwood Land Company not embraced in complainant's mortgage.

In paragraph 18 of the bill, it is averred that the Oakwood Land Company conveyed to the city of Birmingham six acres of the land upon which complainant had a lien under its mortgage, and that this land was used by the city in widening and deepening Valley creek, which creek was and is used by the city as an outlet for the storm water of a large portion of the city of Birmingham. It is averred that the city had notice or knowledge of complainant's lien on said land so taken, at the time it acquired the same from the Oakwood Land Company, and that said land was taken without condemnation proceedings, and without the consent or knowledge of complainant.

The assessments made against the property covered by complainant's mortgage were paid for several years by the Oakwood Land Com-

pany, and then it defaulted, and a part of the property was sold by the city to enforce its assessment liens, and bought by the city. The city, at the time of the filing of the bill, was proceeding to enforce its lien against the lots assessed for street improvement under Ordinance 926–D.

The mortgagor, the said Oakwood Land Company, also defaulted in the payment of its indebtedness under its mortgage to complainant, and the mortgage was duly foreclosed, and at the sale the complainant became the purchaser, and is now the owner, of the property conveyed by the mortgage, except certain lots which had theretofore been released from the lien of the mortgage.

The bill contained other averments which we need not set out.

The complainant prayed for the ascertainment of the amount of the increased value of the abutting property by reason of the special benefits, and that assessments be made accordingly; that the assessments theretofore made be annulled; that the court decree the sales and conveyances made by the city of any of the lots to enforce the payment of the prior assessments be canceled; that the court ascertain and decree the amount of just compensation to which complainant is entitled for land taken by the city, together with interest thereon; that the court state an account by and between the complainant and the city, and will balance or set off the ascertained claim of the complainant for just compensation for the land taken against the ascertained claims of the city for betterments against the respective lots; and that the complainant be given credit against the assessments to be made of any amounts paid by the Oakwood Land Company on the original assessments. The prayer sought other relief not necessary to be here particularly set forth.

The city of Birmingham demurred to the bill and each phase of the same on a number of grounds. The court overruled the demurrer as addressed to the bill as a whole and as addressed to its several aspects. From this interlocutory decree the appeal is taken.

The appellee submits here an elaborate brief taking the point that, inasmuch as he, as mortgagee, was not made a party to the original proceedings, which culminated in the assessing of the paving cost against the abutting lots, he was not bound by the assessments as made; that he was entitled to notice, and to his day in court, in order to have an opportunity to protest the assessment; that he is not estopped, by reason of the proceedings to which he was not made a party, from having the court, in the instant case, to adjudicate the increased value of the lots by reason of the special benefits; that it is wholly immaterial whether the original proceedings were regular or irregular; and that the proceedings theretofore had, and which culminated in the assessments complained of, could only bind the owner, the Oakwood Land Company, not the complainant, who was a mortgagee and lienholder.

This contention was decidedly adverse to the appellee in the recent cases of City of Birmingham v. Emond, 229 Ala. 346, 157 So. 64, and United States Bond & Mortgage Co. v. City of Birmingham, 229 Ala. 536, 158 So. 751.

The appellee has invited a reconsideration of our holding in the Emond Case, supra, which we have done. Further consideration of that case leaves us fully impressed that our conclusion there reached is sound, and is supported by the great weight of authority. We are without inclination to depart from it. 44 Corpus Juris, § 3058, p. 630; Leitch v. City of Dublin, 160 Ga. 691, 128 S. E. 889; Fitchpatrick v. Botheras, 150 Iowa, 376, 130 N. W. 163, 37 L. R. A. (N. S.) 558, Ann. Cas. 1912D, 534.

There is not a single averment in the bill to show that the city failed to observe any requirement of the Constitution, or of the statute, in order to fasten a valid lien upon the abutting lots to the amount of the special benefits derived from the improvements. The contention that the complainant was not made a party to the proceedings, and given notice of the same, is without merit, and the demurrer to this aspect of the bill should have been sustained. United States Bond & Mortgage Co. v. City of Birmingham, supra.

It is insisted that the assessment should be vacated because they were made under an agreement by and between the Oakwood Land Company and the city of Birmingham, to the effect that the assessments were to be made in an amount sufficient to cover the entire cost and expense to the city of paving the street abutting the property, including cost and expense which in no way tended to "an increased value of the property, and were made without regard to the increased value resulting from the special benefits as required by the Constitution and statutes," and without the complainant's knowledge or consent. It is then charged that said agreement and the assessments

made thereunder were constructively fraudulent against the complainant, a lienholder.

Had the complainant, as a lienholder, and therefore a party in interest, in pursuance of the published notice, appeared and protested the assessment, no doubt the complainant could have prevented an assessment against the property in any amount in excess of the special benefits derived from the improvements. Instead of acting to protect himself, as a lienholder, against any excessive assessment, as he had a right to do, and as the statute gave him an opportunity to do, the complainant waited for several years after the assessments were entered to complain, and, in effect, seeks now by his bill to have the case reopened and retried. We know of no provision of law authorizing such a proceeding. Not having protested the assessment, when afforded an opportunity to speak, he cannot now complain. The averment that the agreements between the Oakwood Land Company and the city, and the assessments made thereunder, were constructively fraudulent as against the complainant, is but a statement of the conclusion of the pleader, unsupported by the averment of a single fact to support such a conclusion.

In support of his contention that a fraud was perpetrated upon complainant in the making of the agreement and the assessments thereunder, the complainant cites us to the case of Lyon v. Alley, 130 U. S. 177, 9 S. Ct. 480, 32 L. Ed. 899. We have carefully read this case. but confess our inability to find anything in that case which supports appellee's asserted equity. The bill in this aspect was devoid of equity.

This brings us down to a consideration of that phase of complainant's case which seeks to recover of the city compensation for "taking" without condemnation and without the knowledge or consent of complainant of a major part of lot 1, block 5, for the extension of Berney street, and, in addition, the six acres which the city used in "widening and deepening" Valley creek, as an outlet for storm water of a large portion of the city.

It is averred that the lot and the six acres so taken are now in the possession of the city, and have been put to a public use. That the city of Birmingham could have acquired the property by proper condemnation proceedings there is no doubt.

In the early case of Jones v. N. O. & S. R. R. Co., 70 Ala. 227, 232, this court, speaking through Brickell, Chief Justice, observed: "Though the appellee was a trespasser, by reason of the neglect to pursue the proper remedy for acquiring the lands—acquiring them without the consent of the owner—there is in the right continuing in him to pursue the remedy, rendering the possession rightful, and by which title may be acquired, a plain distinction between the appellee and a common trespasser. * * * No remedy is given the trespasser, by which he may acquire the use and enjoyment of, or title to the lands. There is, also, another distinguishing fact; the structures of the appellee were dedicated, not to the use and enjoyment of the freehold, but to public uses."

In the case of First National Bank of Gadsden v. Thompson et al., 116 Ala. 166, 22 So. 668, 669, this court, on a bill filed to enforce the vendor's lien, held that, where the owner in fee of lands subject to a vendor's lien conveyed a right of way thereon, the complainant was not entitled to have the roadbed and right of way sold to satisfy the claim, but could only compel the railroad company to make just compensation for the lands conveyed to and appropriated by it, and that it would be inequitable to apply the rule that fixed improvements become a part of the realty, "when the right of eminent domain exists, and parties in good faith, under a purchase of land from the owner in fee, enter into possession, and subject the property to the same uses to which it might have been subjected by *ad quod damnum* proceedings. The most that a mortgagee or lienee can claim in such cases is full compensation for the lands appropriated. *The powers of a court of equity are adequate to ascertain and decree the amount to be paid as damages or compensation.*" (Italics supplied.)

In the case of Thornton, pro ami., v. Sheffield & Birmingham R. R. Co., 84 Ala. 109, 4 So. 197, 5 Am. St. Rep. 337, Mrs. Thornton, a married woman, filed a bill in equity praying for compensation for a right of way, and an injunction until compensation was paid. In discussing the case, Chief Justice Stone pointed out that the claim of Mrs. Thornton was for injury done to her freehold; and that her claim, under the averments of the bill, stood on the same meritorious ground as if the road had been built, without prior attempt to procure or condemn the right of way. The court held that the course adopted by the complainant in the case was fully justified by the authorities, and the bill should be retained and made effective by injunction, if necessary, until the damages were properly ascertained, or until the railroad company obtained the right of way in legal form.

To the same effect is the holding of this court in Jones et al. v. Southern Railway Co., 162 Ala. 540, 50 So. 380.

■ The complainant, as for the lands taken and appropriated, has pursued his proper remedy against the city. Authorities supra. The demurrers to this phase of the bill were properly overruled.

■ There is no merit in appellant's contention that the bill is multifarious. Code, § 6526; Mandelcorn v. Mandelcorn, 228 Ala. 590, 154 So. 909, 93 A. L. R. 322; Wilkinson et al. v. Wright et al., 228 Ala. 243, 153 So. 204; Singer v. Singer, 165 Ala. 144, 51 So. 755, 29 L. R. A. (N. S.) 819, 138 Am. St. Rep. 19, 21 Ann. Cas. 1102.

■ The complainant is not entitled to have any amount or amounts decreed to him, as compensation for the lands taken and appropriated, applied to the payment, pro tanto, of the unpaid assessments. His claim, if he establishes one against the city, as for compensation for lands taken and appropriated, must be collected in another way. Shelton, Tax Collector, et al. v. Blount County, 202 Ala. 620, 81 So. 562.

We are at the conclusion, as indicated above, that the demurrers to the bill as a whole, as well as the demurrer to that phase of the bill which seeks to recover compensation for lands taken and appropriated by the city for public uses, were properly overruled, but that the demurrers to all other phases of the bill should have been sustained. A decree will accordingly be so entered.

Affirmed in part, and reversed and rendered in part.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.